656 So.2d 1359 (1995)
BOARD OF TRUSTEES OF the INTERNAL IMPROVEMENT TRUST FUND and Florida Department of Environmental Protection, Appellants,
v.
Kenneth LEVY, Appellee.
No. 94-2764.
District Court of Appeal of Florida, First District.
June 27, 1995.
*1360 L. Kathryn Funchess, Asst. Gen. Counsel, Dept. of Environmental Protection, Tallahassee, for appellant.
Richard A. Lotspeich and John T. Lavia, III of Landers & Parson, Tallahassee, for appellee.
SMITH, Senior Judge.
In this appeal, the Board of Trustees of the Internal Improvement Trust Fund and the Florida Department of Environmental Protection seek reversal of a final order of the Division of Administrative Hearings declaring a rule promulgated by the Trustees to be arbitrary and, thus, void as an unlawful exercise of delegated legislative authority. We find error and reverse.
This rule challenge was filed by Dr. Levy, appellee, in response to the decision of the Division of State Lands, acting as staff for the Trustees, denying Dr. Levy's request to extend his existing 500-foot dock to approximately 600 feet in order to reach greater water depth. The parties stipulated below that Levy had standing to challenge the rule and that he currently has upland access to *1361 his property, which consists of a single-family residence adjacent to the sovereign submerged lands of the Gasparilla-Charlotte Harbor Aquatic Preserve.
The denial of Levy's request for the dock extension was based upon Florida Administrative Code rule 18-201.004(5)(a)1. (1994), which in essence provides that all docking facilities, whether for private residences, commercial, industrial or public, must comply with certain standards and criteria, the first being that no dock "shall extend waterward of the mean or ordinary high water mark more than 500 feet or 20 percent of the width of the water body at that particular location whichever is less... ." The rule implements, in part, the provisions of chapter 258, Florida Statutes, more particularly, subsections 258.42(3)(a) and (e), which read as follows:
258.42. Maintenance of Preserves.
The Board of Trustees of the Internal Improvement Fund shall maintain such aquatic preserves subject to the following provisions:
....
(3)(a) No further dredging or filling of submerged lands shall be approved by the trustees except the following activities may be authorized pursuant to a permit:
....
(e) There shall be no erection of structures within the preserve, except:
1. Private residential docks may be approved for reasonable ingress or egress of riparian owners.
(Emphasis supplied.)
Following an evidentiary hearing before a hearing officer of the Division of Administrative Hearings, an order was entered declaring the rule void as an invalid exercise of delegated legislative authority because the 500-foot limitation prescribed in the rule is arbitrary.[1] This appeal followed.
Preliminarily, we observe that the parties are in agreement as to certain fundamental matters of law. The appellee concedes the power and authority of the state, acting through the Board of Trustees of the Internal Improvement Trust Fund, to prohibit altogether the construction of docks or other structures waterward of the mean or ordinary high water line within aquatic preserves. This authority is based, in part, upon the adoption in Florida of the "Public Trust Doctrine," a principle derived from the English common law, incorporated into the organic law of this state pursuant to a constitutional amendment in 1970, followed by legislative action authorizing private use of portions of sovereignty lands under navigable waters when not contrary to the public interest. See Hayes v. Bowman, 91 So.2d 795 (Fla. 1957); Yonge v. Askew, 293 So.2d 395 (Fla. 1st DCA 1974); Graham v. Edwards, 472 So.2d 803 (Fla. 3d DCA 1985), rev. denied, 482 So.2d 348 (Fla. 1986); Krieter v. Chiles, 595 So.2d 111 (Fla. 3d DCA 1992), rev. denied, 601 So.2d 552 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 325, 121 L.Ed.2d 244 (1992).
The "Public Trust Doctrine" is embodied in the following language found in Article X of the Florida Constitution:
Sec. 11. Sovereignty lands.
The title to lands under navigable waters, within the boundaries of the state, which have not been alienated, including beaches below mean high water lines, is held by the state, by virtue of its sovereignty, in trust for all the people. Sale of such lands may be authorized by law, but only when in the public interest. Private use of portions of such lands may be authorized by law, but only when not contrary to the public interest.
In addition to the provisions of section 258.42(3)(a) and (e) quoted above, we find pertinent a further provision found in section 258.44, which reads as follows:
258.44. Effect of Preserves.
Neither the establishment nor the management of the aquatic preserves under the provisions of this act shall operate to infringe upon the traditional riparian rights of upland property owners adjacent to or within the preserves. Reasonable improvement for ingress and egress, mosquito control, shore protection, public utility *1362 expansion, surface water drainage, installation and maintenance of oil and gas transportation facilities, and similar purposes may be permitted by the trustees, subject to the provisions of any other applicable laws under the jurisdiction of other agencies. (Emphasis supplied.)
The parties are also in agreement that while the Trustees may, but are not required, to permit the construction of docks, the Trustees also have the authority, once docks are permitted, to prescribe standards and criteria governing their construction; and further, that the Trustees are specifically mandated by statute to adopt and enforce reasonable rules and regulations to carry out the purposes of chapter 258. The rulemaking authority of the Trustees, so far as pertinent here, is stated in section 258.43(1), Florida Statutes, as follows:
258.43. Rules and Regulations.
(1) The Board of Trustees of the Internal Improvement Trust Fund shall adopt and enforce reasonable rules and regulations to carry out the provisions of this act and specifically to provide regulation of human activity within the preserve in such a manner as not to unreasonably interfere with lawful and traditional public uses of the preserve, such as support and commercial fishing, boating, and swimming.
Upon our review of the order entered by the Hearing Officer, we observe that he accurately comprehended the import of the above constitutional and statutory provisions, as indicated by his conclusions of law found in the order. In paragraph 19 of his order, the hearing officer found that section 258.43(3)(e)1 and the second sentence of section 258.44 (above quoted), "permit, but do not require" the trustees to allow construction of docks in state preserves to facilitate access. The hearing officer found that appellee had failed to show that the subject rule enlarges, modifies, or contravenes these permissive statutory provisions, and consequently, "has failed to show how the rule offends these statutory provisions." Further, in paragraph 20, the hearing officer found that while the first sentence of section 258.44 prohibits the Trustees from managing the preserve in such a way as to infringe upon the traditional riparian rights of upland property owners adjacent to or within the preserve, "[n]either the factual record of this case nor the law defines the traditional riparian rights of upland owners so as to include the right to extend docks over 500 feet through sovereign submerged lands." Thus, the hearing officer concluded, the rule does not enlarge, modify, or contravene the first sentence of section 258.44.
Next, turning to what the hearing officer found to be the "real question," he inquired whether the rule was arbitrary or capricious, and therefore invalid. Again we find that the hearing officer accurately analyzed the evidence and correctly applied the law in his conclusion that the rule under attack had not been proven to be capricious. Referring to our decision in Agrico Chemical Co. v. Department of Environmental Regulation, 365 So.2d 759, 763 (Fla. 1st DCA 1978), the hearing officer noted: "A capricious action is one which is taken without thought or reason or irrationally. An arbitrary decision is one not supported by facts or logic, or despotic." Applying this definition to the facts, the hearing officer concluded: "The 500-foot limitation appears to have been the product of a process involving the thoughtful balancing of varying factors. Thus, petitioner has failed to prove that the subject rule is capricious."
Notwithstanding our agreement with the hearing officer's findings and conclusions to the extent above recited, we find ourselves in disagreement with his remaining conclusions of law. In paragraphs 23 and 24 of his order, the hearing officer found:
23. Despite the integrity of the process by which the 500-foot limitation was added to the rule, the choice of a 500-foot maximum dock length, beyond which the rule flatly prohibits authorization, is arbitrary.

24. There is no evidence of a relationship between the distance of 500 feet from the mean or ordinary high water line and the protection of biological functions; based on the record it is as likely that biological functions may require docks of no more than 20 feet or possible [sic] 1,000 feet. There is no evidence of a relationship *1363 between the distance of 500 feet from the mean or ordinary high water line and navigational or aesthetic functions. The role of the 500-foot limitation, in protecting the integrity of state aquatic preserves, is based neither on facts in the record nor, after consideration of the factual record, on logic.
We are of the view that the hearing officer erroneously applied the law to the facts in determining that the Trustees' rule was arbitrary, and that his conclusion of invalidity in this respect is inconsistent with other express findings contained in the order, and is contrary to the evidence of record in this proceeding.
First, the hearing officer improperly shifted the burden of proof from the challenger to the Trustees in declaring the rule arbitrary because of the absence of evidence of a "relationship" between a distance of 500 feet from the mean high water line and the protection of biological, navigational or aesthetic interests.[2] The burden of proving abuse of agency discretion is upon the challenger of the rule, who must meet that burden with a preponderance of the evidence. Agrico Chemical Co. v. State Dept. of Environmental Regulation, 365 So.2d 759, 762 (Fla. 1st DCA 1978); Dravo Basic Materials Co., Inc. v. State, Dept. of Transportation, 602 So.2d 632 (Fla. 2d DCA 1992). Thus, the issue before the hearing officer was whether the preponderance of the evidence demonstrated that the trustees could not reasonably have found a relationship between the length of docks as established by the Trustees and the interests sought to be protected by the rule. The rule challenger having failed to make such a showing, the hearing officer should have denied the petition.
Secondly, a logical and reasonable basis for the maximum dock length is found in the evidence of record as recited in the order under review. The hearing officer found, in part, that no single-family docks in aquatic preserves extend over 500 feet into the water. Further, in Charlotte Harbor, the average length of a single-family residential dock is 200 feet. In promulgating the predecessor to the rule in question, originally adopted in 1981, the trustees attempted to balance competing interests such as environmental, aesthetic, recreational, and private commercial. There was some concern that previously authorized docks had infringed upon the riparian access of adjacent upland owners. The 500-foot limitation was added to the rule by amendment in 1985. In setting the criteria for dock length, the hearing officer found, the trustees attempted to set a limit that would not result in the denial of more than a negligible number of dock applications, based on historic dock application data and predominant vessel lengths of under 27 feet. Indeed, as the hearing officer found in deciding that the rule was not capricious: "The 500-foot limitation appears to have been the product of a process involving the thoughtful balancing of varying factors." In our view, these findings of fact contained in the order under review are inconsistent with the conclusion that the rule is arbitrary. To the contrary, we view these findings as ample to show that the trustee's decision was a reasoned one, supported by facts and logic, and that their decision could in no sense be labeled "despotic." Agrico, 365 So.2d at 763.
Finally, the order under review reflects, at least implicitly, a disregard for the principles of presumption of correctness and deference due to the acts of the Trustees. If an agency's interpretation of its governing statutes is one of several permissible interpretations, it must be upheld, despite the existence of reasonable alternatives. Department of Health & Rehab. Services v. Framat Realty, Inc., 407 So.2d 238, 242 (Fla. 1st DCA 1981). Historically, the rule of deference to the actions of public officials has been strongly expressed with respect to the actions of the Trustees in their stewardship of sovereign lands under navigable waters, as in Hayes v. Bowman, supra, in which the court stated:

*1364 It appears to us that our position is strengthened when we take note of the fact that the Trustees of the Internal Improvement Fund are five, (now seven), constitutional officers of the executive branch of government. If we are ever to apply the rule that public officials will be presumed to do their duty, it would appear to us to be most appropriate in this instance. Certainly we are not to assume that in the supervision and disposition of submerged lands the Trustees will knowingly ignore the rights of upland owners. It is assumed that they will give due regard to private rights as well as public rights. The Board would appear to be the most appropriate repository of the responsibility to be exercised in these matters in the first instance. The exercise of their judgment should not be subjected to adverse judicial scrutiny absent a clear showing of abuse of discretion or violation of law... .
91 So.2d at 802.
The issue before the hearing officer in this case was not whether the Trustees made the best choice in limiting the lengths of docks within the preserve, or whether their choice is one that the appellee finds desirable for his particular location. The issue is whether the Trustees made a choice based upon facts, logic and reason. It is clear that they did.
The order appealed is REVERSED.
BARFIELD and ALLEN, JJ., concur.
NOTES
[1] A rule is invalid as an unlawful exercise of delegated legislative authority if, among other things, it is arbitrary or capricious. Section 120.52(8)(e), Florida Statutes (1993).
[2] In paragraph 11, the hearing officer found that "the record does not explain" how the Trustees analyzed data obtained by them prior to the establishment of the 500-foot limitation, and that without "providing more detail," it is "possible" that a limitation of 100 feet or 900 feet would have satisfied the interest sought to be protected by the Trustees.